IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JAMES WHITLEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:17-cv-900-DRH-RJD |
| | ) | |
| GENERAL MOTORS LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

This is a products liability action in which Plaintiff, James Whitley, Jr., alleges he was severely burned by the electronically operated seat warmers in his 2011 GMC Sierra truck. This matter is now before the Court on the Motion to Compel filed by Plaintiff on March 20, 2018 (Doc. 31). Defendant timely responded on April 9, 2018 (Doc. 35). For the reasons set forth below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

**Background**

Plaintiff moves, pursuant to Rule 37 of the Federal Rules of Civil Procedure, for an order compelling Defendant to produce all materials responsive to certain requests for production of documents and interrogatories. Plaintiff's requests, and Defendant's responses thereto, are set forth below:

> **Request for Production No. 14**: A copy of all documents relating to any claims of defects or unsafe conditions in the product, or reported burns allegedly caused by the product, or similar products.
>
> Response: GM will search for and produce, if located, the following documents:
>
> 1. A list of lawsuits, if any, involving a claim of burn injury due to an allegedly overheated driver's resistive front heated system in the scope vehicle.

2. A list of claims handled as Not-In-Suit Matters (NISMS), if any, involving a claim of burn injury due to an allegedly overheated driver's resistive font heated seat system in the scope vehicles.

3. GM has a group known as Customer and Relationship Services (CARS) (formerly Customer Assistance Center or "CAC"), which takes calls from customers and attempts to answer questions or accept complaints relating to GM vehicles. GM also has a Product Assistance Claims (PAC) group, formerly known as the Product Allegation Resolution Center (PAR), which takes calls from customers who claim to have a problem with their vehicle and attempts to arrange for an inspection of the customer's vehicle. GM has a number of databases that store CAC and PAC data. GM will search for and product, if found and subject to a protective order, CAC and PAC data relating to claims of burn injury due to an allegedly overheated driver's resistive front heater seat system in the scope vehicles.

4. Recall bulletins and/or technical service bulletins, if any, pertaining to the risk of burn injury due to an allegedly overheated driver's resistive front heated seat system in the scope vehicles.

5. Subject to a protective order, materials presented to, generated or retained by the North American Safety and Field Action Decision Authority (SFADA), SFADA Field Action Investigation Team, Open Investigation Review (OIR) committee, Potential Investigation Review (PIR) committee, Safety Categorization and Compliance Team (SCCT), or the Global Investigation Review (GIR) committee, if any, involving or relating to claims of burn injury due to an allegedly overheated driver's resistive front heated system in the scope vehicles.

6. Subject to a protective order, materials presented to, generated or retained by the Vehicle and Process Integration Review (VAPIR) committee, Current Production Improvement Team (CPIT), or Executive Field Action Decision Committee (EFADC) related to a claim of burn injury due to an allegedly overheated driver's resistive front heated seat system in the scope vehicles.

7. Subject to a protective order, Technical Assistance Center inquiries involving the allegation of burn injury due to an alleged overheated driver's resistive front heated seat system in the scope vehicles.

8. NHTSA Information Requests (IRs), if any, involving allegations of burn injury due to an allegedly overheated driver's resistive front heated seat system in the scope vehicle. (GM will produce the confidential portions of its responses to any such requests, if any, subject to a protective order).

9. Transport Canada Information Requests and GMCL responses, if any,

involving claims of burn injury due to an allegedly overheated resistive front heated seat system in the scope vehicles.

By agreeing to produce this information, GM is not suggesting that any given claim is valid or that the circumstances underlying any given claim are sufficient similar or substantially similar to the circumstances of Plaintiff's claim to make it relevant or admissible.

GM otherwise objects to this Request because it is vague, ambiguous, overbroad, unduly burdensome, seeks irrelevant information, and seeks information that is not proportional to the needs of this case. GM further objects to this Request to the extent it seeks protected attorney-client communications and attorney work product.

**Request for Production No. 17**: Copy of all materials, including correspondence, between Defendant and the National Highway Traffic Safety Association (NHTSA), or other like agencies, regarding the risk of burns associated with the product, or similar products, or the need for design changes, or additional or potential recalls to the product, or similar products.

Response: GM will search for and produce, if located, communications between GM and the NHTSA regarding the risk of burns from the seat heating system in the scope vehicles. GM otherwise objects to this Request because it is vague, ambiguous, overbroad, unduly burdensome, seeks irrelevant information, and seeks information that is not proportional to the needs of this case.

**Interrogatory No. 8**: Has Defendant had any communications with the National Highway Traffic Safety Administration (NHTSA), or any other like agency, regarding the product, or any other like product, that relate to the concern or possibility that the product may present a safety hazard to users. If so, state the nature of such communications, when the communications took place, and the outcome of any such communications. Please also identify the person(s) who participated in said conversations on behalf of Defendant.

Response: GM will search for and, if located, produce copies of GM's communications with the NHTSA regarding the seat heating system in the scope vehicles. GM otherwise objects to this Interrogatory because it is overbroad, unduly burdensome, seeks irrelevant information, and seeks information that is not proportional to the needs of this case.

**Interrogatory No. 11**: Has Defendant ever hired an expert to testify regarding a claim in a product liability, strict liability, or negligence suit in which someone was allegedly injured due to the design, construction, service, or maintenance with regard to this product or like products as used in similar vehicles? Identify the expert's name, address, telephone (cell) number.

Response: GM objects to this Interrogatory because it is overbroad, unduly burdensome, seeks irrelevant information, and seeks information that is not proportional to the needs of this case. The identity of experts retained to address different claims by different plaintiffs

involving different vehicles has no probative value to this case.

The crux of Plaintiff's argument is that Defendant has improperly limited its responses to the above discovery requests to the "scope vehicles," which Defendant defined. Plaintiff contends that Defendant's definition is self-serving and improperly limited. Specifically, in its initial disclosures dated October 27, 2017, Defendant defined the "scope vehicles" as GMT-900 vehicles with a heated seat system substantially similar to the subject vehicle that included:

- 2007-2014 Chevrolet Tahoe
- 2007-2014 Chevrolet Suburban
- 2007-2014 GMC Yukon
- 2007-2014 GMC Yukon XL
- 2007-2014 Cadillac Escalade
- 2007-2014 Cadillac Escalade ESV

(*see* Doc. 31-1 at 3). Four days later, on October 31, 2017, Defendant served its Supplemental Rule 26(a)(1) disclosures and provided an amended definition of the "scope vehicles." Specifically, Defendant indicated that the "scope vehicles" are those GMT-900 vehicles equipped with a resistive front heated seat system (*see* Doc. 31-1 at 11). Defendant explained that the original resistive front heated seat system in GMT-900 vehicles was significantly changed at the end of the 2008 model year to the resistive front heated seat system in the subject vehicle. Accordingly, Defendant excluded from the scope 2007 vehicles. The amended "scope vehicles" include the following:

- 2008-2013 Chevrolet Silverado
- 2008-2014 Chevrolet Tahoe
- 2008-2014 Chevrolet Suburban
- 2008-2013 Chevrolet Avalanche
- 2008-2013 GMC Sierra
- 2008-2014 GMC Yukon
- 2008-2014 GMC Yukon XL
- 2008-2014 Cadillac Escalade
- 2008-2014 Cadillac Escalade ESV

- 2008-2013 Cadillac Escalade EXT

Defendant used the above amended definition for the "scope vehicles" in its responses to Plaintiff's requests to produce and interrogatories (*see* Doc. 31-1 at 17-18, 29-30). Plaintiff asserts the scope defined by Defendant is too narrow insofar as it excludes models that had resistive front heated seats with cooling capabilities, and fails to account for those models in which Plaintiff's own investigative efforts have revealed previous complaints or lawsuits, including a 2003 Chevy Tahoe, among others. Plaintiff further contends that in 2011 GM added a warning to its GMC Sierra Owner's manual regarding the heated front seats, and such warning is used in many GM vehicles from 2010 onward. Plaintiff is, however, willing to limit his requests to all GM vehicles from 2001 to present.

Defendant asserts that its definition of the "scope vehicles" is appropriate as vehicles deemed outside the scope have indisputably dissimilar heated seat systems. Defendant relies on the Declaration of Robert Smith (Doc. 35-1), a GM Technical Expert with the Engineering Analysis Group, explaining that (amongst other things) "heated seat systems contained in automotive seats are tailored for the particular automotive seat application in which they are used" and the "GMT-900 heated seat system is incompatible with components utilized in prior model GM pickups, utilities, and passenger cars" (Doc. 35-1 at ¶¶ 8, 11). Further, Mr. Smith explains that "[t]he front seats and the resistive heated seat system in GMT-900 vehicles and the subject 2011 Sierra was [*sic*] designed in accordance with the Global Subsystem Technical Specification GMT-900 Integrated Subsystem SOR. That specification was not applicable to pickups, utilities, or passenger cars manufactured before 2007" (*Id.* at ¶ 12). For these reasons, Defendant asserts that its responses to the above-mentioned discovery requests are appropriate and argue Plaintiff seeks discovery beyond the scope of his own requests. Defendant also indicates that because

Plaintiff's requests referred to the product or "similar products," but failed to define the term, it was required to do so.

## Discussion

Federal Rule of Civil Procedure 26(b)(1) provides that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. In a products liability action such as this, courts have found that discovery relating to products that are not "substantially similar" to the product at issue have little evidentiary value and should not be allowed. *See, e.g., Piacenti v. General Motors Corp.*, 173 F.R.D. 221, 225 (N.D. Ill. 1997). Further, although evidence of other accidents in products liability cases is relevant to show notice to the defendant of the danger, the proponent of such evidence must demonstrate that the other accidents occurred under substantially similar circumstances to be admitted. *Wallis v. Townsend Vision, Inc.*, 648 F.Supp.2d. 1075, 1082 (7th Cir. 2009) (citing *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988)). While the question here is discoverability and not admissibility, the "substantially similar" discussion is instructive. In *Piacenti*, the court considered whether the products had the same "component parts or defects" or shared "pertinent characteristics." *See Piacenti*, 173 F.R.D. at 225-26.

Here, Defendant has demonstrated that the "scope vehicles" have heat seat system components that are incompatible with components utilized in prior model GM pickups, utilities, and passenger cars. Indeed, the heat system components of the "scope vehicles" have particular specifications that were not applicable to pickups, utilities, or passenger cars manufactured before 2007. Based on this information, it appears that Defendant has properly identified "similar products," as requested by Plaintiff's written discovery requests. Notably, Plaintiff did not

request information concerning all GM vehicles or all GM vehicles from 2001 to present; rather, he limited his requests to the product or similar or like products. This not only invited Defendant to provide a definition of "like products," but required it. Defendant simply responded to the questions that were asked. Further, requiring Defendant to produce the above-information on all GM vehicles from 2001 to present would not be proportional to the needs of the case, considering the lack of similarity of the vehicles and the burden and expense that Defendant would incur in providing discovery likely to have little benefit.

Although the Court declines to broaden the "scope vehicles" to all GMs from 2001 to present, after careful review of Defendant's responses and the affidavit of Mr. Smith, the Court finds that Defendant's definition of the "scope vehicles" must be expanded to include vehicle models from the year 2007 for the Chevrolet Silverado, Chevrolet Tahoe, Chevrolet Suburban, Chevrolet Avalanche, GMC Sierra, GMC Yukon, GMC Yukon XL, Cadillac Escalade, Cadillac Escalade ESV, and Cadillac Escalade EXT. It is not apparent why these vehicles were excluded, except that the resistive front heating system was "significantly changed" at the end of the 2008 model year. It is not clear why this change occurred or if it significantly altered the component parts or specifications. For these reasons, the Court **ORDERS** Defendant to supplement its responses to the discovery requests at issue to include information for vehicles identified as the "scope vehicles" for model year 2007. Defendant's supplemental responses must be produced by **May 14, 2018**.

Finally, the Court sustains Defendant's objection to Plaintiff's Interrogatory No. 11 as the request is overly broad and seeks information that is not proportional to the needs of this case. Moreover, Plaintiff failed to specifically address this request in their motion and did not proffer any specific argument in opposition to Defendant's objection.

**IT IS SO ORDERED.**

**DATED: April 24, 2018**

          *s/ Reona J. Daly*
          **Hon. Reona J. Daly**
          **United States Magistrate Judge**